Argued and submitted April 29, reversed and remanded for entry of judgment
dismissing plaintiffs' FED claim December 3, 2008

## Mark GREENE
## and Days Inn,
*Plaintiffs-Respondents,*

*v.*

## Sharon HREN,
*Defendant-Appellant.*

## Multnomah County Circuit Court
## 06F014349; A133288

197 P3d 1118

Harry D. Ainsworth argued the cause and filed the brief for appellant.

C. Thomas Davis argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiffs, Days Inn and its account manager, Greene, prevailed in this forcible entry and detainer (FED) action to recover possession of a motel room that defendant occupied for more than a month. Defendant appeals, arguing that the trial court erred in entering judgment for plaintiffs because they failed to prove that they provided the notice that the Oregon Residential Landlord and Tenant Act (RLTA) requires. Defendant also contends that the trial court erred in dismissing a counterclaim of ouster. We conclude that the trial court did not err in dismissing defendant's counterclaim, but that it did err in granting judgment for plaintiffs on the FED claim because the claim is governed by the RLTA and plaintiffs failed to prove notice. We therefore reverse and remand for entry of judgment dismissing plaintiffs' FED claim.

The relevant facts are not in dispute. Defendant checked into a Days Inn motel on May 25, 2006, and paid cash for two weeks in advance at a daily rate of $45.50, plus the local city occupancy tax. After those two weeks were up, defendant paid cash for another seven days in advance at the same daily rate.

On June 26, she provided her mother's credit card information to cover further charges. On that same date, plaintiffs began charging defendant a higher daily rate of $69. Plaintiffs did not provide defendant with a written notice of the rate change.

On July 17, plaintiffs attempted to use the credit card again to cover additional charges, but the credit card would not accept the entire amount due. Defendant's mother then cancelled the authorization to charge her credit card.

At some point after that—the record does not specify precisely when—plaintiffs gave defendant a written "72-hour eviction notice," alleging $483 in unpaid charges. Defendant made no payment and did not move out. Defendant believed that she did not have any unpaid charges. She had two reasons for that belief. First, the arrearage was based on the

increase in rent of which she did not receive notice; she believed that plaintiffs could not lawfully increase her rent without first providing her with notice. Second, defendant believed that, pursuant to a city ordinance, after she had stayed at the motel for 30 days, plaintiffs could no longer charge her the city occupancy tax. (She was correct about that, and plaintiffs later credited her account for the amounts charged for the tax.)

Meanwhile, on July 24, defendant accidentally locked herself out of her room. Greene refused to give her another key; he demanded payment of the outstanding charges and told defendant that he wanted her to move out. Defendant refused. She then found a housekeeper, who let her back into her room. Around the same time, on two occasions, Greene did not allow defendant access to the breakfast room that is provided for guests.

Plaintiffs then initiated this FED action against defendant. They brought the claim as one arising under the RLTA, using a form residential eviction complaint. They sought restitution of the premises pursuant to ORS 90.394 for "72-hour or 144-hour notice for nonpayment of rent." Plaintiffs attached a copy of a 72-hour notice to the complaint. Defendant filed a *pro se* answer, asserting that she did not owe plaintiffs any money.

By the time of trial, both parties had legal representation, although neither sought to amend the *pro se* pleadings. At the outset of the trial, however, plaintiffs stated that their own complaint was mistaken in relying on the RLTA. They informed the court that they would be taking the position that the RLTA did not apply and that, as a result, it was not necessary for them to prove that they provided defendant with the notice that the statute requires. According to plaintiffs, they were entitled to an exclusion from the RLTA for transient motel or hotel occupancy.

Defendant objected that the exclusion did not apply and asserted that plaintiffs' FED claim would fail unless proper notice was established. At that point, plaintiffs objected to defendant's assertion of a lack of proper notice

defense on the day of trial. Defendant responded that notice is actually an element of plaintiffs' FED claim under the RLTA, and not a defense. The trial court ultimately ruled that defendant was entitled to raise the issue of notice.

Plaintiffs' evidence consisted solely of the testimony of defendant and of Greene. Defendant testified that she had received a 72-hour eviction notice from plaintiffs, although she did not testify about its contents or about the date that she received it. Defendant admitted that she had not made any payment since receiving the notice, but she disputed that she owed plaintiffs anything, given what she regarded as the unlawful increase in rent and the improper charging of the city occupancy tax. According to Greene, defendant "was served with a notice of nonpayment of rent," although he did not testify when that occurred.

At the close of plaintiffs' evidence, defendant moved for a judgment of dismissal under ORCP 54 B(2), arguing that, by not introducing into evidence the eviction notice and not eliciting testimony that the notice complied with the requirements of the RLTA, plaintiffs had failed to make a *prima facie* case to evict defendant. The trial court denied defendant's motion.

Defendant then put on her own evidence, which included her own testimony and that of Greene. During Greene's testimony, plaintiffs attempted to introduce into evidence a copy of the 72-hour notice that they had attached to their complaint. Defendant objected. The trial court did not rule on defendant's objection, stating that it was "satisfied that there was notice given," but the document was never received into evidence.

At the close of the evidence, the trial court invited argument about the applicability of the RLTA. Plaintiffs argued simply that "it is a day-to-day occupancy" and did not address whether they had proved what is required to establish the exclusion for transient motel or hotel occupancy. Defendant argued that plaintiffs had failed to establish each of the particular elements of the statutory exclusion and that,

as a result, the notice requirements of the RLTA apply. According to defendant, plaintiffs simply failed to prove that whatever notice that defendant said she received satisfied the specific notice requirements of the statute.

The trial court concluded that defendant's 52-day motel stay was an accumulation of daily occupancies and, as a result, is excluded from the RLTA as a "transient occupancy." In consequence, the court determined, whether plaintiffs established the required RLTA notice was not relevant. The court then determined that defendant was in arrears to plaintiffs and, accordingly, that plaintiffs were entitled to a judgment for restitution of the premises.

Defendant moved out in accordance with the trial court's order and filed this appeal. On appeal, she maintains that she was entitled to the protections of the RLTA and that the trial court should have dismissed plaintiffs' case for their failure to make a *prima facie* case under the RLTA. She also contends that the trial court should have allowed her to advance a counterclaim for ouster not raised in her answer because, at the time she filed her answer, she was not represented by an attorney.

Plaintiffs respond by raising a threshold issue—that is, that defendant's appeal is moot because defendant complied with the trial court's judgment and moved out. In response to the merits of defendant's contentions, plaintiffs insist that the RLTA does not apply in this case and that, because defendant was a tenant at sufferance, a *prima facie* case for eviction need include proof only that defendant had stopped paying.

■ We first address plaintiffs' assertion that this appeal is moot. Physical possession and the right to possession are two distinct issues in an FED action. In this case, defendant's move out of the motel room resolved the issue of *physical* possession; that was not, however, a concession that plaintiffs had a *right* to possession. Whether the trial court correctly determined that plaintiffs were entitled to evict defendant and regain possession of the premises is precisely the issue that defendant raises on appeal. Accordingly, the dispute

between the parties in this case is not moot. *See Pendergrass v. Fagan*, 218 Or App 533, 536-37, 180 P3d 110, *rev den*, 344 Or 670 (2008) (holding that, "even if a tenant vacates the premises and resolves the issue of 'physical possession' of the premises, a tenant's defenses to an eviction action are not moot if the issue of 'right to possession' remains for the court to decide") (citing *Edwards v. Fenn*, 308 Or 129, 132-33, 775 P2d 1375 (1989)).

■       Turning to the merits, we first address defendant's contention that the trial court should have dismissed the FED claim for want of proof that plaintiffs satisfied the RTLA's notice requirements for terminating a tenancy subject to the RLTA. The determinative issue is whether the RLTA applies at all; if it does not, then—as the trial court determined—whether plaintiffs satisfied the notice requirements of the RLTA becomes irrelevant.

To determine whether the RLTA applies, we must construe the statute to ascertain the intent of the legislature that enacted it. In undertaking that task, we examine the statute's text in context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The RLTA "applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." ORS 90.115. A "dwelling unit" is a "structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household." ORS 90.100(9).

Notwithstanding that broad definition, the statute excludes a variety of types of occupancy from its provisions. Among those exclusions is a "[t]ransient occupancy in a hotel or motel." ORS 90.110(4). The RLTA defines "transient occupancy" as an

> "occupancy in transient lodging that has all of the following characteristics:
>
> "(a)   Occupancy is charged on a daily basis and is not collected more than six days in advance;

"(b) The lodging operator provides maid and linen service daily or every two days as part of the regularly charged cost of occupancy; and

"(c) The period of occupancy does not exceed 30 days."

*Former* ORS 90.100(43) (2005), *renumbered as* ORS 90.100(45) (2007). "Transient lodging" is defined as "a room or a suite of rooms." *Former* ORS 90.100(42) (2005), *renumbered as* ORS 90.100(44) (2007).

In this case, defendant emphasizes the fact that the exclusion applies only if *all* of the foregoing characteristics have been established. According to defendant, plaintiffs failed to do that, given the undisputed evidence that her rent was collected more than six days in advance and that her period of occupancy of 52 continuous days exceeded the statutory 30-day maximum. Because plaintiffs failed to establish all the required characteristics of a transient hotel or motel occupancy, she contends, the RLTA—and its notice requirements—apply to this case. Plaintiffs respond that, although it is true that this case "looks similar to a landlord-tenant action," it differs because of "the unique relationship between hotel-motels and occupants." Plaintiffs do not explain how that unique relationship relates to the specific definitional components of *former* ORS 90.100(43); plaintiffs, in fact, do not mention the statute beyond noting that it is the basis for defendant's argument. Instead, plaintiffs contend that "a fair balance between the rights of the tenant and the rights of the landlord" require that the creation of an RLTA tenancy "should be agreed to by both parties." In this case, plaintiffs contend, there was no such agreement, given the fact that, each time defendant paid for her occupancy, it was for a different period of time.

The problem with plaintiffs' argument is that it completely ignores the terms of the applicable statutes. We are not at liberty to balance the rights of tenants and landlords when the legislature already has completed the task. *Former* ORS 90.100(43) expressly provides that, to qualify as a transient occupancy that is excluded from the application of the RLTA, an arrangement must have *all* of three enumerated characteristics. That means that, to qualify for the exclusion from the provisions of the RLTA, the evidence must show

that, among other things, plaintiffs did *not* accept payment more than six days in advance, *former* ORS 90.100(43)(a), and that they did *not* permit defendant to occupy a room at the motel for more than 30 consecutive days, *former* ORS 90.100(43)(c). In this case, it is undisputed that plaintiffs did precisely both of those things—that is, on two occasions, plaintiffs accepted payment for more than six days in advance, and they permitted defendant to occupy her motel room for 52 consecutive days.

Plaintiffs insist that the fact that defendant's occupancy was charged on a daily rate means that each day represented a new occupancy and, thus, defendant's "occupancy" was never longer than one day at a time. Were that construction to be correct, however, no occupancy would ever meet the transient occupancy exclusion; it would be impossible to both charge occupancy on a daily basis, *former* ORS 90.100(43)(a), *and* have a period of occupancy that exceeds 30 days, *former* ORS 90.100(43)(c). We will not read the statute in such a way that renders the transient occupancy exclusion nonexistent.

Because the parties' arrangement in this case does not meet all of the characteristics of a "transient occupancy," the RLTA governs. *See Stonebrook Hillsboro, L.L.C. v. Flavel*, 187 Or App 641, 643, 69 P3d 807, *rev den*, 335 Or 656 (2003) (stating that two people who stayed at a hotel for a period exceeding 30 days became tenants entitled to the protections of the RLTA). We turn, then, to the relevant requirements of the RLTA.

ORS 90.394 provides, in part:

"The landlord may terminate the rental agreement for nonpayment of rent and take possession as provided in ORS 105.105 to 105.168, as follows:

"* * * * *

"(2) For all tenancies *other than week-to-week tenancies*, by delivering to the tenant:

"(a) At least 72 hours' *written notice* of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the eighth day of the rental period, including the first day the rent is due; or

"(b)   At least 144 hours' *written notice* of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period. The landlord shall give this notice no sooner than on the fifth day of the rental period, including the first day the rent is due.

"(3)   The notice described in this section must also specify the amount of rent that must be paid and the date and time by which the tenant must pay the rent to cure the nonpayment of rent."

(Emphasis added.) A week-to-week tenancy is one in which occupancy is charged on a weekly basis, where the rights and obligations of the parties are spelled out in a written rental agreement, and where there are no fees or security deposits. *Former* ORS 90.100(46) (2005), *renumbered as* ORS 90.100(48) (2007). ORS 90.155 provides, in part:

"(1)   * * * [W]here this chapter requires *written notice,* service or delivery of that written notice shall be executed by one or more of the following methods:

"(a)   Personal delivery to the landlord or tenant; [or]

"(b)   First class mail to the landlord or tenant[.]

"* * * * *

"(3)   A landlord or tenant may utilize alternative methods of notifying the other so long as the alternative method is in addition to one of the service methods described in subsection (1) of this section."

(Emphasis added.)

The methods by which a landlord subject to the RLTA may evict a tenant are described in the FED statutes. ORS 105.120(3) provides:

"An action for the recovery of the possession of a dwelling unit to which [the RLTA] applies may be maintained in situations described in ORS 105.115(2) when the notice to terminate the tenancy or to quit has been served by the tenant upon the landlord or by the landlord upon the tenant or person in possession in the manner prescribed by ORS 90.155."

ORS 105.115(2) provides, in part:

"In the case of a dwelling unit to which [the RLTA] applies:

"(a)   The following are causes of unlawful holding by force within the meaning of ORS 105.110 and 105.123:

"(A)   When the tenant or person in possession of any premises fails or refuses to pay rent within 72 hours or 144 hours, as the case may be, of the notice required by ORS 90.394.

"* * * * *

"(b)   A landlord may not file an action for the return of possession of a dwelling unit based upon a cause of unlawful holding by force as described in paragraph (a) of this subsection until after the expiration of a rental agreement for a fixed term tenancy or after the expiration of the time period provided in a notice terminating the tenancy."

Based on the foregoing statutes, a plaintiff in an eviction action governed by the RLTA must establish the following: (1) that the defendant is in arrears to the plaintiff; (2) that the plaintiff has provided the defendant with a 72-hour or 144-hour written nonpayment notice; (3) that that notice was given "no sooner than" the fifth or eighth day of the rental period; and (4) that the defendant occupies the premises beyond a specified due date without making the payment stated in the notice.

In this case, defendant argues that plaintiffs failed to prove that they served the eviction notice on her in compliance with the notice provisions of the RTLA and the FED statutes. She argues that, among other things, plaintiffs failed to prove that the notice was served within the time required by the statute. Defendant is correct. Nothing in the record produced at trial establishes that plaintiffs satisfied the applicable notice requirements. Greene did testify that he caused defendant to be served with some sort of notice. He did not testify when the notice was served. And defendant testified that she received a notice of unspecified form. She, too, did not testify when the notice was served. The notice itself, as we have stated, was never received into evidence. We are left, as a result, with a record that fails to establish what the RLTA requires as a prerequisite to plaintiffs' FED claim. It necessarily follows that the trial court erred in entering judgment in favor of plaintiffs on their FED claim.

Defendant also contends that she proved a counterclaim for several incidents of ouster and that the trial court wrongfully rejected it. Defendant did not plead a counterclaim, and defendant does not assign error to any ruling that pertains to a counterclaim. We reject defendant's contention without further discussion.

Reversed and remanded for entry of judgment dismissing plaintiffs' FED claim.